PHILIP H. WOODARD AND BESSIE WOODARD, APPELLANTS, V. CITY OF LINCOLN AND VIRGIL L. WELLS, APPELLEES.

578 N.W. 2d 892

Filed May 12, 1998.   No. A-97-241.

Richard Collin Mangrum, of Creighton University School of Law, for appellants.

Stephen L. Ahl, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellees.

HANNON, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

Philip H. Woodard and Bessie Woodard appeal an order of the district court for Lancaster County granting the motion for

summary judgment of the City of Lincoln (City) and Virgil L. Wells. The Woodards brought suit against the City and Wells under the Political Subdivisions Tort Claims Act (Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1992), but the district court determined the action was not timely under the Act's statute of limitations and dismissed. The Woodards contend that the actions of the City's claims specialist estop the City and Wells from using the statute of limitations defense.

## FACTUAL BACKGROUND

On May 28, 1992, while riding his bicycle in Lincoln, Nebraska, near the intersection of Capitol Parkway and D Street, Philip was struck and injured by a City "Handi-Bus" driven by Wells. Philip was riding his bicycle in the crosswalk of that intersection at the time he was struck, and he sustained a fractured right hip.

On June 11, 1992, the Woodards met with Kent Imig, a claims specialist for the City. At this meeting, Imig tape-recorded an interview with Philip regarding the circumstances of the accident. In affidavits which are in the record, the Woodards contend that at this meeting Imig encouraged them not to hire an attorney but to negotiate with the City directly. On July 7, the Woodards and Imig signed a "Letter of Understanding" which provided that the City was "willing" to voluntarily reimburse Philip for lost wages and some medical expenses on a "periodic basis." The letter also contained the following language: "This will also acknowledge that in the event that either party retains legal counsel for the purpose of representation for the May 28, 1992 accident, that written notice will immediately be given to the other party, and that all voluntary payments will be discontinued at that time."

Pursuant to this letter of understanding, the City reimbursed Philip for various medical expenses and lost wages. The City has paid Philip $13,544.77, mostly for lost wages. The last voluntary payment was made on April 28, 1993, which included lost wages through April 15, when Philip returned to work. On May 12, Philip filed a written notice of claim with the City by a certified letter to James Faimon in the city attorney's office.

The City made several written settlement offers to the Woodards during 1994 and 1995, none of which were accepted.

These offers are attached to the Woodards' reply as exhibits and reflect the following offers: an offer for $100,000, dated December 22, 1994, with the City obtaining credit for payments already made; a structured settlement, dated March 15, 1995, with an immediate cash payment of $50,000 and $500 payable monthly for life, guaranteed for 10 years; a structured settlement, dated April 19, 1995, with an immediate cash payment of $29,000, $1,000 payable monthly for 12 years, and $20,000 payable in 12 years as a future capital payment; and a structured settlement, dated August 7, 1995, with an immediate cash payment of $75,000, $500 payable monthly for 12 years, and $20,000 payable in 12 years as a future capital payment. The Woodards did not obtain legal counsel until negotiations broke down in November 1995. The Woodards filed a petition against the City and Wells in the district court for Lancaster County on March 22, 1996. Philip asked for damages for past and future medical care and lost wages. Bessie asked for damages for loss of consortium. In their answer, the City and Wells raised the affirmative defense that the case was barred by the 2-year statute of limitations, as well as that Bessie failed to submit a written claim to the City within 1 year after the claim accrued, as required by the Act.

In its ruling on the motion for summary judgment, the trial court rejected the Woodards' argument that Bessie substantially complied with the notice requirements of the Act by signing the letter of understanding. The court found that Bessie's claim was barred, reasoning that

> the substantial compliance doctrine has only been extended to cover cases in which *the claimant* filed a written claim with the appropriate designee but the claim's *content* was lacking in some respect. *See e.g., Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988).
>
> In this case, Bessie Woodard never filed a formal written notice with the city; therefore, the substantial compliance doctrine is inapplicable.

The trial court also rejected the Woodards' argument that the City and Wells should be equitably estopped from asserting the statute of limitations defense because of the letter of under-

standing and because the City continued to negotiate with the Woodards well into 1995. The trial court stated:

> In *Bohl v. Buffalo Cty.*, 251 Neb. 492, 498[, 557 N.W.2d 668, 673 (1997),] the Nebraska Supreme Court rejected this argument stating: "This court has never applied, and will not apply in this case, the doctrine of equitable estoppel to excuse a plaintiff's failure to comply with the Political Subdivision[s] Tort Claims Act."
>
> There are several disturbing elements present in this case, not the least of which is the direct admonition of the City that all voluntary payments will cease if the plaintiffs obtain the services of an attorney. In my opinion, this is improper, particularly when made by an experienced claims adjustor to an injured party. However, whether these actions of the City warrant the application of the doctrine of equitable estoppel involve[s] broad areas of public policy and the integrity of the judicial process that are more properly addressed by the Nebraska Supreme Court. Based on the law as it now exists, I must find the doctrine of equitable estoppel to be inapplicable here.

Thus, the trial court sustained the City and Wells' motion for summary judgment and dismissed the Woodards' petition for failure to comply with the Act.

## ASSIGNMENTS OF ERROR

The Woodards appeal to this court and, restated, argue that the trial court should have applied the doctrine of equitable estoppel as a bar to the City and Wells' statute of limitations defense. The Woodards also argue that the trial court erred in finding that Bessie's signature on the letter of understanding did not satisfy the written notice of claim requirement in the Act.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. A reviewing court views the evidence in a light

most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from submitted evidence. *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997).

## ANALYSIS

■ A plaintiff pursuing an action against a political subdivision must satisfy the time requirements set out in § 13-919(1). That section provides in part:

> Every claim against a political subdivision permitted under the Political Subdivisions Tort Claims Act shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body. Except as otherwise provided in this section, all suits permitted by the act shall be forever barred unless begun within two years after such claim accrued.

The evidence shows that Philip timely made a written claim to the City but that Bessie did not, unless we were to construe her signature on the letter of understanding as substantial compliance with the 1-year notice of claim requirement. However, it is clear from the record that the suit by the Woodards was not filed within 2 years after the claim accrued on May 28, 1992. Thus, we will first consider whether the City and Wells are equitably estopped from asserting the statute of limitations defense to the lawsuit filed by both Philip and Bessie.

*Equitable Estoppel.*

■ The Woodards argue that the City and Wells should be estopped from asserting the 2-year statute of limitations because the City's continuing negotiations with the Woodards and the letter of understanding kept them from retaining counsel and led them to believe that they could file suit if and when the negotiations ended without settlement. Distilled further, the Woodards assert that the City misrepresented whether it would use the statute of limitations against them. At the core of this claim is the doctrine of equitable estoppel. The Nebraska Supreme Court has set forth six elements which must be satisfied for the doctrine of equitable estoppel to apply:

> "(1) conduct which amounts to a false representation or concealment of material facts, or at least, which is calcu-

lated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons . . . (3) knowledge, actual or constructive, of the real facts . . . [4] lack of knowledge and of the means of knowledge of the truth as to the facts in question; [5] reliance, in good faith, upon the conduct or statements of the party to be estopped; and [6] action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel . . . ."

*Bohl v. Buffalo Cty.*, 251 Neb. at 498-99, 557 N.W.2d at 673, quoting *Hamilton v. Hamilton*, 242 Neb. 687, 496 N.W.2d 507 (1993).

The Supreme Court has also restricted the application of equitable estoppel against a governmental entity, stating: " ' "Ordinarily, the doctrine of equitable estoppel cannot be invoked against a municipal corporation. . . . Exceptions are made only where right and justice so demand. The doctrine is to be applied with caution and only in exceptional cases under circumstances demanding its application to prevent manifest injustice.". . .' " *Willis v. City of Lincoln*, 232 Neb. 533, 540, 441 N.W.2d 846, 850 (1989), quoting *Christian v. Geis*, 193 Neb. 146, 225 N.W.2d 868 (1975). It is noteworthy that in rejecting an estoppel claim, the *Willis* court found it important that "[n]o one informed [the plaintiff] or his lawyer that proper filing of a claim was unnecessary [and that] the Political Subdivisions Tort Claims Act contains a clear procedure for filing a tort claim against a municipality . . . ." *Willis v. City of Lincoln*, 232 Neb. at 541, 441 N.W.2d at 851. See, also, *County of Scotts Bluff v. Hughes*, 202 Neb. 551, 276 N.W.2d 206 (1979) (holding that doctrine of equitable estoppel will not be invoked against government absent compelling circumstances).

In *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997), the plaintiff was injured in an automobile accident involving a deputy sheriff for Buffalo County, on August 17, 1991. Following the accident, the plaintiff and her husband signed a partial payment agreement, provided by an adjuster for

the county's insurance carrier, acknowledging the plaintiff's receipt of $10,485 paid on behalf of Buffalo County. The agreement contained the following language: " 'It is understood the Statute of Limitations requires that any legal action for damages from this accident must be commenced before August 17th 1995.' " *Id.* at 494, 557 N.W.2d at 671. The agreement used a 4-year statute of limitations when the 2-year statute of limitations from the Act was applicable. From August 18, 1993, to September 1994, the plaintiff filed several actions against the county and the deputy sheriff, but had difficulty overcoming the procedural and jurisdictional requirements for a suit against a government entity and its employees, which difficulties we need not recount here. Eventually, the plaintiff filed a third amended petition on September 1, 1994, which, among other things, requested that Buffalo County be estopped from raising the defense of the statute of limitations because of the plaintiff's reliance on the county's representation in the partial payment agreement that the statute of limitations did not run until August 17, 1995. The district court granted the county's motion for judgment on the pleadings because the plaintiff had failed to establish all six elements of estoppel.

On appeal, the Supreme Court held, "This court has never applied, and will not apply in this case, the doctrine of equitable estoppel to excuse a plaintiff's failure to comply with the Political Subdivisions Tort Claims Act." *Id.* at 498, 557 N.W.2d at 673. The Supreme Court then immediately turned to the district court's ruling that the plaintiff did not adequately plead equitable estoppel, holding, "Even if we were to apply such a doctrine, however, a review of the pleadings suggests that [the plaintiff] failed to properly allege the elements of equitable estoppel." *Id.*

Significantly, *Bohl* was decided on a motion for judgment on the pleadings, which, as the *Bohl* court noted, is granted when from the pleadings it appears that *only* a question of law is presented. See, also, *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993). In making such a motion, the moving party admits the truth of all well-pled facts, together with all inferences to be drawn therefrom. *Id.* The court has also said that when a "defense is strictly a legal one, summary judgment

may not be substituted for . . . a motion for a judgment on the pleadings." *Healy v. Metropolitan Utilities Dist.*, 158 Neb. 151, 157, 62 N.W.2d 543, 547 (1954). Given the unique attributes of a motion for judgment on the pleadings, which was the procedural posture of *Bohl*, the conclusion seems unavoidable that as a matter of law, equitable estoppel cannot be used to avoid the statute of limitations in a case involving the Act. But, with all due respect, the "even if" portion of the *Bohl* opinion seems to make it rather unlikely that *Bohl* is to be so read. Additionally, other cases which specifically make equitable estoppel available against political subdivisions, albeit only under compelling circumstances, seem to also prevent reading *Bohl* as holding that equitable estoppel is unavailable as a matter of law.

The petition in *Bohl v. Buffalo Cty.*, 251 Neb. 492, 499, 557 N.W.2d 668, 673 (1997), contained the following factual allegations with regard to estoppel:

> "[The insurance adjuster,] while acting as an adjuster for defendant Buffalo County's insurance carrier, provided a 'Partial Payment Agreement' to the plaintiff and her husband . . . which stated and represented the statute of limitations to be August 17, 1995, the 'Partial Payment Agreement' being attached hereto as Exhibit '1' and incorporated herein by reference. Plaintiff relied upon this representation by the insurance adjuster."

The Supreme Court held that this paragraph was inadequate to support using the doctrine of equitable estoppel against the county. Although not specifically stated in the opinion of the *Bohl* court, apparently even the inferences to be drawn from this paragraph were not considered by the court as sufficient to adequately plead equitable estoppel. The court stated:

> While it appears from the face of the pleadings that a misrepresentation was made and that [the plaintiff] relied on such misrepresentation, [the plaintiff] inadequately pled all six elements of equitable estoppel. Therefore, as a matter of law, [the plaintiff] was not entitled to relief under the doctrine of estoppel, Buffalo County's motion [for judgment on the pleadings] was properly granted, and Buffalo County was appropriately dismissed from this lawsuit.

*Id.*

In their reply to the City and Wells' answer, the Woodards assert that the City and Wells are equitably estopped from using the statute of limitations as a defense. Paragraph 4 of the reply states:

> [The Woodards allege] that even if this action is barred by the statute of limitations, that the [City and Wells] are estopped from asserting the statute of limitations, based upon their acknowledgement [sic] of the claim and their extended settlement negotiations which depended upon the [Woodards'] not contacting an attorney and not filing suit . . . .

If we read *Bohl* as staking out the legal position that equitable estoppel is not available, as a legal matter, to bar a political subdivision's use of the statute of limitations defense, then the discussion is over and the dismissal of the Woodards' suit should be rather perfunctorily affirmed. However, despite the procedural posture of *Bohl* and the inferences readily drawn from the admittedly false representation of Buffalo County that the plaintiff's claim was protected by a 4-year statute of limitations, we find that *Bohl* does not erect a complete bar to the use of equitable estoppel against a statute of limitations defense in a tort claim. In large part, we conclude this because of the clear pronouncements that political subdivisions may be subject to equitable estoppel under *compelling* circumstances where right and justice so demand in the interest of preventing manifest injustice. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997); *Jennings v. Dunning*, 232 Neb. 366, 440 N.W.2d 671 (1989). Thus, we first analyze the pleadings and then analyze whether compelling circumstances are presented by the record.

In their reply, the Woodards have not adequately pled equitable estoppel, especially under *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997). In *Bohl,* the plaintiff had at least pled that there was a misrepresentation and reliance on the misrepresentation. Here, the Woodards have pled only "their extended settlement negotiations which depended upon the [Woodards'] not contacting an attorney and not filing suit" as the facts giving rise to an equitable estoppel. But they do not plead that the City misrepresented anything, they just plead what happened.

However, this case is before us on appeal from the district court's grant of the City's motion for summary judgment, rather than a motion for judgment on the pleadings, as was the case in *Bohl*. Thus, in addition to the pleadings, we must look at the entire record.

Exhibit 5 is an affidavit by Philip, which contains the following statements and which, if we were to find "compelling" circumstances, is where we would have to find such, at least in large part. We quote from the affidavit:

> 3. . . . Imig during this interview encouraged both [Philip] and his wife not to obtain legal counsel, but instead to negotiate with the City of Lincoln directly. . . .
>
> . . . .
>
> 5. That on July 7, 1992 [Philip] and his wife entered into a "Letter of Understanding" formalizing the agreement that he would receive voluntary reimbursement for medical expenses and lost wages as well as negotiate a settlement of the claims with the City upon condition that he not obtain legal representation. Based upon these representations he did not obtain legal representation at this time.
>
> . . . .
>
> 7. That . . . based upon these continuing settlement offers and negotiations and further assurances that the City would voluntarily settle without litigation, all of which were conditioned upon his not obtaining legal representation, he did not obtain legal representation at this time.
>
> 8. That . . . he never at any time prior to his acquiring legal representation on December 1, 1995 was ever informed of any statute of limitations, of his need to obtain legal counsel to consider any statute of limitation. Nor was he ever made aware of any such requirement. Rather he was led to believe by the "Letter of Understanding" that he had reserved his right to file an action when and if a voluntary final settlement could not be made.

■ Read broadly and generously, these factual allegations contain some of the elements of estoppel, i.e., that the letter of understanding contained the concept that the Woodards could file a claim when and if a voluntary settlement without counsel

could not be made, irrespective of when that occurred, and second, that the Woodards relied on this in not obtaining counsel and in not filing suit until after the City's insurer said no further offers would be made. But the letter of understanding says only that the Woodards can "claim damages in the future." The affidavits by the Woodards do not claim that they were told (1) that there were no legal prerequisites to suit, (2) that the "future" was indefinite, or (3) that the City would never raise a defense that the Woodards' claim was time barred. The Woodards' affidavits say that they were "led to believe by the 'Letter of Understanding' " that they had reserved the right to file a claim when a voluntary settlement was not obtainable. That, of course, is what they believed—but we need to look for a misrepresentation of law or fact in the letter of understanding or even a factual allegation of a misrepresentation in the affidavits. There is none, unless it comes from the use of the words "reserve the rights . . . to claim damages in the future." But the "future" is an indefinite term, and the use of the word "future" does not affirmatively misrepresent the matter of the statute of limitations in any way. Granted, the letter does not tell the Woodards that "future" is limited by the statute of limitations, but there is no authority that a potential defendant must advise a potential adversary of the law generally or specifically of the statute of limitations. See, *Golden v. Scalise*, 87 A.D.2d 959, 451 N.Y.S.2d 215 (1982) (no duty upon potential defendant to inform adversary of existence of cause of action); *Turner v. Turner*, 582 P.2d 600, 603 (Wyo. 1978) (holding that "[a] potential defendant has no duty to remind a claimant that the statute of limitations is running"). *Turner* is an alleged equitable estoppel case in which the Supreme Court of Wyoming observes that "the mere pendency of negotiations during the period of a statute of limitations, which are conducted in good faith with a view to ultimate compromise, is not of itself sufficient to establish an estoppel." *Id.* There is no claim here that the offers of settlement were not made in good faith.

If there is no equitable estoppel in *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997), for wrongly telling the plaintiff that there was a 4-year statute of limitations when it was really only 2 years, we cannot find such from use of the word

"future." Moreover, there is nothing in this letter which can be construed as representing to the Woodards that they could file suit against the City only if and when negotiations broke down. The Woodards specifically reserve all of their rights, which includes the right to sue. There is no language in the letter which represents to the Woodards that they could file a claim regardless of how long negotiations might take. The letter contains the following language:

> Any advance payment should not be construed as an admission of liability on the part of the City of Lincoln, but rather an advancement towards any possible liability claim settlement which may be negotiated in the future. It should also be clear that any advance payments made by the City of Lincoln are not guaranteed and could end at any time. This will also acknowledge that in the event that either party retains legal counsel for the purpose of representation for the May 28, 1992 accident, that written notice will immediately be given to the other party, and that all voluntary payments will be discontinued at that time.

This portion of the letter contains no misrepresentation by the City. While it is understandable how the "threat" that the voluntary payments would cease if the Woodards retained counsel could induce the Woodards not to retain counsel, it is not a misrepresentation or a concealment of material facts. It is just a statement of the trade—If we can deal with you directly, we will make some voluntary advance payments on your claim which the law does not require us to make. Moreover, the record shows that the last voluntary payment was made to the Woodards on April 28, 1993, over a year before the statute of limitations had run. If the inducement of the voluntary payments was keeping the Woodards from retaining counsel, this inducement ended long before the statute of limitations had run. Thus, the inducement of voluntary payments or the threat that they would end cannot be a basis for applying equitable estoppel. See *Reifschneider v. Nebraska Methodist Hosp.*, 233 Neb. 695, 447 N.W.2d 622 (1989) (if plaintiff has ample time to institute action after inducement of delay has ceased to operate, plaintiff cannot excuse failure to act within statutory time on ground of estoppel).

■ The trial court was obviously troubled by the City's desire that the Woodards not have an attorney and its inducement to that end. The Woodards' brief suggests that our failure to reverse would encourage experienced counsel for political subdivisions to adopt this practice "to keep worthy claimants unrepresented until their actions become time barred." Brief for appellants at 18. We think we need not go beyond the obvious reality, which is that claimants such as the Woodards can make a choice—get some immediate partial payments the tort-feasor is not obligated to make and perhaps save money on attorney fees by handling their own case. The risk for claimants is like that of self-surgery—the operation may be messy, and the patient may not survive. People do have a right to represent themselves, *State v. Warford*, 223 Neb. 368, 389 N.W.2d 575 (1986), and they also have the right to be represented if they choose to hire counsel. The City made no misrepresentation about either of these fundamental rights. The City simply, and obviously, preferred that the Woodards be unrepresented. The Woodards' citation of authority to cases involving the right to counsel in criminal prosecutions is simply off point.

Turning to the previously cited admonition to invoke equitable estoppel against a governmental entity only under compelling circumstances to prevent manifest injustice, we note an important fact: The Woodards offered evidence of concrete and sizable settlement offers beginning December 22, 1994, and continuing to August 7, 1995, in support of their estoppel argument. Thus, the City was willing to settle with the Woodards for Philip's injuries well beyond the time when the statute of limitations had run on May 28, 1994. If it were truly the City's intention to trick or induce the Woodards into not seeking counsel until after the statute of limitations had run in order to avoid making payment to the Woodards, the City would not have negotiated with the Woodards after May 29, 1994. While we do not undertake a comprehensive evaluation of the settlement offers, they were substantial. In light of such offers, this case does not present compelling circumstances warranting the invocation of the doctrine of equitable estoppel against the City, even if we were to ignore for the moment the gaps in the pleadings and proof of that doctrine.

This much said, there is, nonetheless, at least on the surface, a course of conduct from the letter of understanding and the settlement offers which arguably can be said to have lulled the Woodards into a false sense of security that this claim would be settled—no matter what or when. One cannot justly or equitably lull his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then plead the very delay caused by his or her conduct as a defense to the action when it is filed. *State Farm Mut. Auto. Ins. Co. v. Budd*, 185 Neb. 343, 175 N.W.2d 621 (1970). In *Budd*, Aetna Casualty & Surety Company, as the defendant's representative, assured State Farm Mutual Automobile Insurance Company, the plaintiff, 14 times that its claim for property damage subrogation would be considered after the underlying bodily injury claim was settled, and on three occasions Aetna said it would "honor" State Farm's claim.

In *Budd*, the court discussed equitable estoppel to some extent but said: " 'Equitable estoppels cannot in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor be hampered by the narrow confines of a technical formula.' " *Id.* at 346, 175 N.W.2d at 624, quoting *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966). The *Budd* court further quoted from *National Union Fire Ins. Co. v. Bruecks, supra*: " ' "[A] person is held to a representation made on a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon." ' " *State Farm Mut. Auto. Ins. Co. v. Budd*, 185 Neb. at 346, 175 N.W.2d at 624.

Thus, under *Budd*, the Woodards argue that they were led to believe that the City would honor their claim or that they were lulled into believing that their claim would be paid. Using the language of *Budd*, the difficulty is in finding "trickery and dishonesty," 185 Neb. at 347, 175 N.W.2d at 624, by the City, which is contrary to "equity, morality, justice, and good conscience," *id.* at 347-48, 175 N.W.2d at 624, by which the City defeated the claim. We say this because it is hard to ascribe the descriptors "trickery and dishonesty" to the City's actions when

it makes four separate and substantial settlement offers to the Woodards, all after the statute of limitations had run on their case. Second, under *Bohl*, the *Budd* notion that equitable estoppel is not subject to " 'fixed and settled rules of universal application' " has been diluted if not largely abandoned. Thus, there is no proof of false representation or concealment of material fact, and we are unwilling to impose the duty on a defendant to affirmatively advise a plaintiff about a statute of limitations.

Consequently, we find that *Budd*, upon which the Woodards heavily rely, is factually distinguishable because, at the very least, Aetna affirmatively told State Farm on three occasions that its claim would be honored. In contrast, the letter of understanding is clear that the City was not admitting liability.

In conclusion, we find that the district court did not err in refusing to apply the doctrine of equitable estoppel to bar the City and Wells from asserting the statute of limitations defense.

## CONCLUSION

Because we have determined that the 2-year statute of limitations in § 13-919 bars the Woodards' suit against the City and Wells, we need not determine whether Bessie filed a written claim with the City within 1 year after the claim accrued. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (holding appellate court need not address issues unnecessary to its decision). The judgment of the district court is affirmed.

AFFIRMED.

MUES, Judge, dissenting.

I respectfully dissent. But first I must state that I agree with the majority's view of *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997), and with portions of the majority's well-reasoned opinion, particularly that the Woodards' evidence is not as complete as one would expect. Nevertheless, in my opinion, the evidence is sufficient to allow for the inference that the City engaged in conduct calculated to convey the impression to the Woodards that formal legal proceedings and rules were not going to govern this claim. The Woodards are not lawyers, and their perceptions and impressions must not be judged as if they were.

The relationship here existed from June 1992 through November 1995, nearly 3½ years. The statute ran in May 1994.

It was not until after the negotiations broke off in November 1995 that the Woodards sought legal counsel. Presumably, that was also the first time the City sought legal counsel, at least if it were true to the "Letter of Understanding." It was also the first time the defense of the statute of limitations was raised.

That the City continued to negotiate with the Woodards for approximately 1½ years after the statute of limitations had run is very interesting. One conclusion to draw from the continued negotiations is the one noted by the majority, which is that it is difficult to infer that the City was engaged in "trickery and dishonesty." I agree that is a fair conclusion. I suggest an equally reasonable, and not inconsistent, inference is that the City, like the Woodards, was operating under the impression that formal rules, including those regarding the passage of time, had been set aside and that consistent with that impression, good faith settlement negotiations should and would continue to a final resolution.

The majority concludes that there is no proof that the City made a false representation or concealed a material fact. Frankly, I find it hard to accept that concealing something as critical as the statute of limitations under these circumstances is not the concealment of a material fact, but I realize there is law that suggests as much. But even assuming, without conceding, that Nebraska law would allow such a material fact to be concealed with impunity, I do not believe that proof of a false representation or the concealment of a material fact is a prerequisite to the doctrine of equitable estoppel. Certainly, such findings would ease the burden of one attempting to invoke the doctrine's effect, but as *Bohl* makes clear, conduct sufficient to work an estoppel may be something less than making false statements or concealing facts. It need be only such conduct which, apparently in the eye of a reasonable person and under the circumstances of the case, is found to be calculated to convey the impression that the facts are otherwise than subsequently asserted.

Simply put, I believe the evidence here is sufficient to support the inference that the City engaged in conduct calculated to convey to the Woodards that their dispute was going to be resolved without insisting that the strict "letter of the law" be

followed. Indeed, the participation in the process of those trained as "experts" in law—lawyers—was discouraged, and payments were to be made voluntarily without lawsuits and judgments and such things that the law and lawyers would ordinarily require. I believe the evidence would support a finding that the Woodards were lulled into a sense of security over the course of some 3½ years and then, with the period of limitation comfortably behind it, the City changed rules and transformed from magnanimous sovereign into litigious adversary.

I do not intend to suggest that the Woodards have established conclusive entitlement to the benefits of equitable estoppel. I only say that they are entitled to have the issue decided by a fact finder rather than as a matter of law. I would, therefore, reverse the grant of summary judgment in favor of the City and Wells and allow that to occur.