PHILIP H. WOODARD AND BESSIE WOODARD, APPELLANTS, v. CITY OF LINCOLN AND VIRGIL L. WELLS, APPELLEES.

588 N.W. 2d 831

Filed February 5, 1999.    No. S-97-241.

Richard Collin Mangrum, of Creighton University School of Law, for appellants.

Stephen L. Ahl and Michael A. England, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

This is a negligence action brought pursuant to the Nebraska Political Subdivisions Tort Claims Act (Act), Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1992). The suit arose out of a collision between appellee City of Lincoln's "Handi-Bus," driven by appellee Virgil L. Wells, and appellant Philip H. Woodard. Philip was struck by the Handi-Bus while riding his bicycle in a crosswalk at the intersection of 28th and D Streets and Capitol Parkway in Lincoln. Philip is suing the City of Lincoln (City) and Wells for damages arising from the collision. Bessie Woodard, Philip's wife, is also suing for loss of consortium.

The trial court granted summary judgment for the City and Wells, finding that the Woodards' petition had been filed after the running of the statute of limitations and that the City was not equitably estopped from raising the statute of limitations as a defense. The trial court also found that Bessie had failed to give written notice of her claim to the City within 1 year of the accident, as required by the Act.

The Nebraska Court of Appeals affirmed the judgment of the trial court, and we have taken the case on petition for further

review. We affirm in part, and in part reverse, and remand the cause for further proceedings.

## BACKGROUND

Philip alleges that on May 28, 1992, he was riding his bicycle in the crosswalk across 28th Street at the intersection of 28th and D Streets and Capitol Parkway. A City Handi-Bus, driven by Wells, was stopped at the stop sign on 28th Street. The Handi-Bus began to turn onto Capitol Parkway and struck Philip, who suffered serious injuries as a result. Bessie claims a loss of consortium resulting from this same incident.

Shortly thereafter, Kent Imig, a claims specialist from the City's risk management office, met with the Woodards regarding the facts and circumstances of the accident. During this interview, Imig allegedly encouraged the Woodards not to retain counsel, but instead to negotiate directly with the City. This interview ultimately resulted in a "Letter of Understanding" dated July 7, 1992, which provided that voluntary payments would be made by the City to the Woodards, but that these payments would stop if either side retained counsel "for the purpose of representation for the May 28, 1992 accident." The letter further stated that it was not an admission of liability by the City, and it "reserves the rights of Mr. and Mrs. Philip Woodard to claim damages in the future on account of the . . . accident."

Pursuant to this letter, the City reimbursed Philip for various medical expenses and lost wages. The last voluntary payment was made on April 28, 1993, which included lost wages through April 15, when Philip returned to work. On May 12, Philip filed a written notice of claim with the City by a certified letter to James Faimon in the city attorney's office.

The City made several written settlement offers to the Woodards during 1994 and 1995, none of which were accepted. These offers were attached to the Woodards' reply as exhibits and reflect the following offers: an offer for $100,000 dated December 22, 1994, with the City obtaining credit for payments already made; a structured settlement, dated March 15, 1995, with an immediate cash payment of $50,000 and $500 payable monthly for life, guaranteed for 10 years; a structured settlement, dated April 19, 1995, with an immediate cash payment of $29,000, $1,000 payable monthly for 12 years, and $20,000

payable in 12 years as a future capital payment; and a structured settlement, dated August 7, 1995, with an immediate cash payment of $75,000, $500 payable monthly for 12 years, and $20,000 payable in 12 years as a future capital payment.

In November 1995, settlement negotiations between Imig and the Woodards broke down. At that time, the City turned the matter over to its insurance carrier and the Woodards first retained legal counsel. Only after the claim was turned over to the insurance carrier, some 3½ years after the accident, was the 2-year statute of limitations raised as an issue.

On March 22, 1996, the Woodards filed a petition against the City and Wells in the district court for Lancaster County, Nebraska. Philip asked for damages for past and future medical care and lost wages, and Bessie asked for damages for loss of consortium. In their answer, the City and Wells raised the affirmative defense that the case was barred by the statute of limitations, as well as that Bessie failed to submit a written claim to the City within 1 year after the claim accrued, as required by the Act. On these grounds, the City and Wells moved for summary judgment.

The Woodards responded that the City, through the letter of understanding and other conduct, had induced them to not retain counsel, had reserved their rights to make a future claim notwithstanding the Act, and was equitably estopped from asserting the statute of limitations as a defense. The trial court, relying on *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997), found that the Woodards had not established equitable estoppel and that their petition had been filed after the running of the Act's statute of limitations. The trial court additionally found that Bessie's loss of consortium claim was barred for lack of filing notice of the claim with the City within 1 year of the accident, and that neither Philip's written notice nor Bessie's signing of the letter of understanding constituted substantial compliance by Bessie with the notice requirement. Accordingly, the trial court granted summary judgment to the City and Wells.

The Woodards appealed the trial court's decision to the Court of Appeals, which, with one judge dissenting, affirmed the grant of summary judgment on the grounds that the Woodards' suits were barred by the statute of limitations. *Woodard v. City of*

*Lincoln*, 7 Neb. App. 11, 578 N.W.2d 892 (1998). The Court of Appeals did not determine whether Bessie's claim was barred for lack of filing notice, as this was unnecessary to the disposition of the case.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998).

## ASSIGNMENTS OF ERROR

The Woodards assign that the Court of Appeals erred by (1) requiring proof of active misrepresentation for estoppel in disregard of the broader standard of authority they cite as controlling; (2) not recognizing as a basis for equitable estoppel the City's concealment of material facts; (3) not recognizing as a basis for equitable estoppel the City's assertion that facts were otherwise than those which its previous conduct had been calculated to convey; (4) holding that the denial of estoppel based upon a judgment on the pleadings in *Bohl v. Buffalo Cty., supra*, controls the summary judgment motion in the instant case; and (5) not finding that compelling circumstances demand the application of estoppel on the facts of this case to avoid manifest injustice.

## ANALYSIS

### PHILIP'S CLAIM

This court recognized over 100 years ago that a party can estop itself from relying on time-based defenses if it induces its

opponent's delay in prosecuting the action. In *Phenix Ins. Co. v. Rad Bila Hora Lodge*, 41 Neb. 21, 59 N.W. 752 (1894), an insurance policy contained a 6-month statute of limitations for suits against the company on the policy. In holding that the insurance company could not rely on the limitation if it induced the delay, the court wrote:

> Persons undoubtedly authorized to represent the company to some extent and for some purposes in the adjustment of the loss were shown to have conducted negotiations and made proposals for settlement until after the expiration of six months. We have no doubt that if [the six-month limitation clause] is of any validity the company may, by its conduct, estop itself from claiming the benefit thereof, and that when the company by holding out prospects of an amicable settlement induces the plaintiff to forbear suit until after the expiration of the time limited, the company is thereby estopped from claiming the benefit of the special limitation.

*Id.* at 30, 59 N.W. at 755.

The situation facing the court today is remarkably similar to that in *Phenix Ins. Co. v. Rad Bila Hora Lodge, supra.* If the appellee in this case were a private party, there is no doubt that summary judgment would have been improper, given the allegations of inducement to delay made to the Woodards.

The City, as an appellee, is not a private party, however, but, rather, a political subdivision, and as such is subject to suit only through the Act. We stated in *Bohl v. Buffalo Cty.*, 251 Neb. 492, 498, 557 N.W.2d 668, 673 (1997), that "[t]his court has never applied, and will not apply in this case, the doctrine of equitable estoppel to excuse a plaintiff's failure to comply with the Political Subdivisions Tort Claims Act."

In *Bohl v. Buffalo Cty., supra*, Bohl had signed a partial payment agreement, drawn by an adjuster for Buffalo County's insurance carrier, which erroneously stated that the relevant statute of limitations was 4 years instead of 2. Bohl filed suit more than 2 years after the accident giving rise to her injuries, and the trial court granted Buffalo County's motion for judgment on the pleadings.

This court held that Bohl inadequately pled the elements of equitable estoppel and thus that the trial court had properly granted the motion. The court declined to answer the question whether equitable estoppel could ever be invoked to excuse failure to comply with the Act.

Other Nebraska cases have held that the state or one of its political subdivisions may be subject to equitable estoppel under compelling circumstances, where right and justice so demand in the interest of preventing manifest injustice. *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997); *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989); *Jennings v. Dunning*, 232 Neb. 366, 440 N.W.2d 671 (1989).

We also note that other jurisdictions have applied the doctrine of estoppel against political subdivisions under circumstances similar to those present in this case. See, *Black v. Lexington School Dist. No. 2*, 327 S.C. 55, 488 S.E.2d 327 (1997); *Molinar v. City of Carlsbad*, 105 N.M. 628, 735 P.2d 1134 (1987); *Jarvis v. City of Stillwater*, 732 P.2d 470 (Okla. 1987).

We find no reason to place the tort claims acts outside the reach of the doctrine of equitable estoppel. Thus, we hold that the state and its political subdivisions can be equitably estopped from relying on the statute of limitations found in the tort claims acts upon a showing that the elements of equitable estoppel have been met, as well as compelling circumstances, where right and justice so demand in the interest of preventing manifest injustice.

This court has set forth six elements that must be satisfied for the doctrine of equitable estoppel to apply: (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and of the means of knowledge of the truth as to the

facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel. *Bohl v. Buffalo Cty., supra.*

The first prong of this test, which was the basis of the Court of Appeals' decision, is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed. See *State Farm Mut. Auto. Ins. Co. v. Budd*, 185 Neb. 343, 175 N.W.2d 621 (1970). The majority opinion of the Court of Appeals acknowledged that the City's conduct "arguably can be said to have lulled the Woodards into a false sense of security that this case would be settled—no matter what or when," but distinguished our holding in *State Farm Mut. Auto. Ins. Co. v. Budd, supra*, as requiring " 'trickery and dishonesty.' " *Woodard v. City of Lincoln*, 7 Neb. App. 11, 25, 578 N.W.2d 892, 900 (1998). The Court of Appeals stated that it could find no allegation by the Woodards of trickery or dishonesty, and that any such implication was negated by the fact that the City made several substantial settlement offers after the expiration of the statute of limitations. *Id.*

The dissent in *Woodard v. City of Lincoln, supra*, would have found the evidence sufficient to allow the inference that the City had indicated that formal legal proceedings and rules were not going to govern the Woodards' claim and that the claim was going to be resolved without insisting that the strict letter of the law be followed. *Id.* The dissent viewed the series of settlement offers put forth by the City after the statute of limitations had expired as substantive evidence of the City's intentions in this regard. We agree with the dissent's analysis to the extent that we find that under the facts of this case, whether equitable estoppel is to be applied to Philip's claim is a question of fact which precludes the granting of summary judgment in favor of the City and Wells.

Philip must be given the benefit of all reasonable inferences deducible from the evidence. The letter of understanding stated that it "reserve[d] the rights of Mr. and Mrs. Philip Woodard to

claim damages in the future." While the Court of Appeals rightly found that this language alone does not raise an inference that the City intended to convey the impression that the statute of limitations would not apply to Philip's claim, it is not inconsistent with such an inference.

More probative are statements found in Philip's affidavit. Philip stated that he was led to believe by the letter of understanding that he had reserved his right to file an action when and if a voluntary final settlement could not be made. He also stated that the letter was a formalization of "the agreement that he would . . . negotiate a settlement of the claims with the City upon condition that he not obtain legal representation" and that the City gave him repeated "assurances that the City would voluntarily settle without litigation."

We find that in combination, these statements give rise to the reasonable inference that the City intended to convey to Philip that his claim would be settled rather than litigated. As the filing of a petition is unnecessary if there is to be no litigation, it is a reasonable inference that the City also intended to convey the impression that no petition need be filed at all. Certainly the concept that no petition need be filed at all includes the concept that no petition need be filed within the statute of limitations.

By raising the statute of limitations as a defense, the City is subsequently and inconsistently asserting that Philip did have to file a petition within the statute of limitations in order to recover for his injuries. This is sufficient to meet the first prong of the test for equitable estoppel.

We distinguish the situation where mere attempts to settle are made. "[T]he mere pendency of negotiations during the period of a statute of limitations, which are conducted in good faith with a view to ultimate compromise, is not of itself sufficient to establish an estoppel." *Turner v. Turner*, 582 P.2d 600, 603 (Wyo. 1978). However, ordinary settlement negotiations contain the implicit notion that if settlement is not reached, then litigation may be necessary. It is the City's conveyance of the impression that litigation would not be necessary that, if proved to the finder of fact, establishes the level of misrepresentation necessary for equitable estoppel.

If the City behaved in the manner in which Philip alleges, we find that such conduct meets the standard of "compelling circumstances where right and justice so demand in the interest of preventing manifest injustice." *Inner Harbour Hospitals v. State*, 251 Neb. 793, 804, 559 N.W.2d 487, 495 (1997). In comparison to *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997), where the alleged misrepresentation was a single statement erroneous as a matter of law, Philip alleges a long-term course of conduct conveying a representation of fact that Philip need not file a petition within the statute of limitations.

As the dissent in *Woodard v. City of Lincoln*, 7 Neb. App. 11, 25, 578 N.W.2d 892, 900 (1998), stated, Woodard was lulled into a sense of security over the course of some 3½ years, and then, "with the period of limitation comfortably behind it, the City changed rules and transformed from magnanimous sovereign into litigious adversary." *Id.* at 28, 578 N.W.2d at 902. Such behavior, if allowed, would work a manifest injustice, and thus, if Philip can satisfy the elements of equitable estoppel to the fact finder, such estoppel must be allowed.

We expressly note that today's holding creates no duty on the part of political subdivisions or any other party to inform an adversary of the existence of a statute of limitations or other nuances of the law. We merely hold that the evidence presented by Philip raises a reasonable inference that the City conducted itself so as to represent that the filing of a petition within the statute of limitations was not to be a requirement in Philip's case and that if such an inference can be proved at trial, then it would be manifestly unjust to allow the City to rely on the statute. Accordingly, summary judgment was inappropriate on this issue and the judgment of the trial court must be reversed with regard to Philip's claim.

### BESSIE'S CLAIM

Although the above analysis applies equally to Bessie's claim insofar as her claim was barred by the 2-year statute of limitations, her claim is different from Philip's in that she never filed a notice of claim with the City as required by § 13-919(1).

Bessie argues that the City should be estopped from relying on the notice requirement based on the same conduct analyzed

above with regard to the statute of limitations. However, one of the elements that must be shown in order to establish equitable estoppel is reliance, in good faith, upon the conduct or statements of the party to be estopped. *Bohl v. Buffalo Cty., supra.* Bessie stated in her affidavit that

> because she did not consult with an attorney and the City did not indicate otherwise *she relied on the actual notices* the City had already received of the claims, including (1) the taped interview on June 11, 1992, which was transcribed; (2) the "Letter of Understanding" wherein the City of Lincoln expressly acknowledged the accident and agreed to reserve the rights of both herself and her husband to claim damages in the future; (3) her husband's written notice of May 12, 1993; (4) together with the fact that she and her husband were conducting ongoing settlement negotiations with the City of Lincoln.

(Emphasis supplied.) Bessie does not allege that she failed to comply with the notice requirements in reliance on the City's conduct, but, rather, that she relied on the actual notice that she felt had been given to the City. She has therefore failed to establish the elements of equitable estoppel as regards her failure to comply with the claim requirements of the Act.

Bessie also argues that her signature on the letter of understanding constitutes substantial compliance with the notice requirements of § 13-919(1). We have held that with regard to a claim's content, substantial compliance with the statutory provisions supplies the requisite and sufficient notice to a political subdivision. *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417 N.W.2d 757 (1988). However, we made clear in *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), that in order for a written notice to substantially comply with the requirements of § 13-919(1), such written notice must be filed with an individual or office designated in the Act as the authorized recipient of claims. The City's risk management office, for whom Imig worked and with whom the agreement in the letter of understanding was reached, is not an authorized recipient of claims under § 13-905, and thus even if the content of the letter gives notice of Bessie's claim, she did not give it to the proper individual or office.

For these reasons, we hold that the trial court's granting of summary judgment in favor of the City and Wells on Bessie's claim was correct and is hereby affirmed.

## CONCLUSION

We hold that the evidence presented by Philip raises an inference, which presents a question of fact, that the City would not assert the statute of limitations as a defense in this case. This holding requires that the summary judgment in favor of the City and Wells on the claim of Philip be reversed and the cause remanded for further proceedings consistent with this opinion.

As to Bessie's claim, we affirm the trial court's granting of summary judgment in favor of the City and Wells, because she did not comply with the notice provisions of § 13-919(1).

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

CONNOLLY, J., dissenting.

I conclude that there is no genuine issue of material fact that would give rise to equitable estoppel in the instant case, and therefore, I respectfully dissent.

The majority concludes that there is a genuine issue of material fact as to whether the City had indicated that formal legal proceedings and rules were going to govern the Woodards' claim and, thus, whether the statute of limitations would apply. This conclusion is based entirely on the "Letter of Understanding" between Philip and the City, and Philip's affidavit as to *his* understanding of that letter. The letter of understanding provided that the City would make voluntary payments to the Woodards, but that these payments would stop if either side retained counsel. The letter also indicated that it was not an admission of liability by the City and that the Woodards could claim damages in the future. Thus, the letter of understanding indicated that no litigation would be necessary to the extent that the City was willing to make voluntary payments.

Had the City continued to make such voluntary payments until the statute of limitations had run, the Woodards' claim might conceivably have merit. However, in the instant case, the City stopped making voluntary payments on April 28, 1993, more than a year prior to the expiration of the statute of limita-

tions. Thus, the City stopped communicating the impression that the statute of limitations would not apply as of April 28, long before the statute of limitations had run. Accordingly, as of April 28, the City's conduct or statement could not amount to a false representation or concealment of material facts, or have been calculated to convey or import the impression that the facts were otherwise than, and inconsistent with, those which the City subsequently attempted to assert. In other words, "all bets were off." The letter of understanding could not, as a matter of law, indicate to the Woodards that the City would not assert the statute of limitations as a defense.

Indeed, Philip's own act would appear to acknowledge as much, since he did not file a written notice of claim with the City until shortly *after* the City stopped making voluntary payments pursuant to the letter of understanding. This action indicates that Philip himself had recognized that the "rules of the game" had already changed and that legal rules now applied. It is difficult to see how Philip could simultaneously assert that he, in good faith, believed that formal legal proceedings and rules were not to govern his claim against the City and, yet, feel compelled to send a written notice of claim by a certified letter. If Philip believed that "no petition need be filed at all," as the majority asserts, then why file a written notice of claim?

The Nebraska Court of Appeals was correct in affirming the trial court's order, and I would affirm.

WRIGHT and STEPHAN, JJ., join in this dissent.