# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

No. 04-6070/6071/6072 NE

_____

| | | |
|---|---|---|
| In re Corn-Pro Nonstock Cooperative, Inc., | * | |
| | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | Appeals from the United States |
| Cooperative Supply, Inc. and | * | Bankruptcy Court for the District |
| Darwin Franzen, | * | of Nebraska |
| | * | |
| Petitioning Creditors-Appellants/ | * | |
| Cross-Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Corn-Pro Nonstock Cooperative, Inc., | * | |
| | * | |
| Debtor-Appellee/Cross-Appellant. | * | |

_____

Submitted: November 23, 2004
Filed: December 16, 2004

_____

Before KRESSEL, Chief Judge, SCHERMER, and FEDERMAN, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

FACTUAL BACKGROUND

These appeals arise out of an involuntary bankruptcy petition which was filed by Cooperative Supply, Inc. and Darwin Franzen (Petitioning Creditors) against debtor Corn-Pro Nonstock Cooperative, Inc. (Corn-Pro). In response to the involuntary petition, on July 29, 2003, Corn-Pro filed a motion to dismiss, contending that, as a "farmer," within the meaning of the Bankruptcy Code (the Code),[1] it is not eligible to be the subject of an involuntary bankruptcy petition.[2] Corn-Pro also requested attorney's fees and costs in such motion. Thereafter, the parties filed cross-motions for summary judgment, with supporting affidavits and documentation, concerning that issue. By order entered January 26, 2004, the bankruptcy court[3] granted Corn-Pro's motion for summary judgment, based on its determination that Corn-Pro is, indeed, a farmer.[4] The court also denied the Petitioning Creditors' motion for summary judgment. At that same hearing, the bankruptcy court deferred its decision on Corn-Pro's request for attorney's fees and costs.

On February 18, 2004, Corn-Pro filed a separate motion for attorney's fees and costs under section 303(i)(1) and (2).[5] On May 11, 2004, the court held a hearing on Corn-Pro's motion and on June 1, 2004, it issued an order denying Corn-Pro's request for attorney's fees and costs.[6]

---

[1] 11 U.S.C. § 101(20).

[2] 11 U.S.C. § 303(a).

[3] The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

[4] Case No. 03-83232, Doc. # 65.

[5] Doc. # 72.

[6] Appellant's Appendix, # 11.

After we dismissed appeals from both orders as interlocutory,[7] the bankruptcy court, on November 12, 2004, entered judgment dismissing the case, based on the prior determination that Corn-Pro was a farmer, and denying Corn-Pro's motion for fees and expenses. The Petitioning Creditors appealed the portion of the judgment dealing with dismissal, and Corn-Pro cross-appealed the portion of the judgment denying fees and expenses. We affirm.

## STANDARD OF REVIEW

As to dismissal of the involuntary petition, we review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.[8] A decision to grant or deny fees and expenses to a debtor upon dismissal of an involuntary petition is left to the discretion of the court, thus, we review that order for abuse of discretion.

## A. ELIGIBILITY FOR RELIEF

The bankruptcy court determined that Corn-Pro is a "farmer," against which an involuntary petition may not be filed.

Section 303(a) of the Code provides, in relevant part, that an involuntary case "may be commenced only under Chapter 7 or Chapter 11 of this Title, and only against a person, except a farmer . . . ."[9] Section 101(20) of the Code defines a farmer as a "person that received more than 80% of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person

---

[7]*See,* Judgment dismissing appeals entered Nov. 10, 2004, in Case Nos. 04-6031, 04-6032, and 04-6036.

[8]*O'Neal v. Southwest Missouri Bank of Carthage (In re Broadview Lumber Co.)*, 118 F.3d 1246, 1250 (8th Cir. 1997).

[9]11 U.S.C. § 303(a).

during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person."[10]

The Code then defines a person to include an individual, partnership, or corporation.[11] Corn-Pro is a Nebraska nonstock cooperative association, which was founded by Articles of Incorporation dated October 25, 1996.[12] A nonstock cooperative association is a corporation organized pursuant to Nebraska's Nonstock Cooperative Marketing Act (the Act).[13] The Code provides that a corporation is a person, and that a person can be a farmer if more than 80 percent of such person's income is derived from a farming operation. It is undisputed that all of Corn-Pro's income is derived from its livestock production. The issue then is whether that livestock production is a farming operation. Section 101(21) provides that a "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."[14]

In the course of its business, Corn-Pro, which is no longer operating, purchased isowean pigs (pigs that are weaned early, weighing between 9 and 12 pounds) from a farrower. It then contracted with hog producers and arranged, through its independent-contractor managers, for third parties to transport the pigs from the farrower to the producers' facilities. The producers then fed and raised the pigs to

---

[10]11 U.S.C. § 101(20).

[11]11 U.S.C. § 101(41).

[12]Appellants' Appendix, pg. 114-119.

[13]*Pig Pro Nonstock Cooperative v. Moore*, 568 N.W. 2d 217, 219 (Neb. 1997); Neb. Stat. Ann. § 21-1401 (Supp. 2004).

[14]11 U.S.C. § 101(21).

finishing or slaughter weight. Once they were ready for slaughter, Corn-Pro sold them to packers and hired trucking companies to ship the hogs to the packers.

In *Otoe County National Bank v. Easton* (*In re Easton*),[15] the Eighth Circuit considered whether an individual who rented farmland out could treat the rental income as having been received from a farming operation within the meaning of section 101(21). The court concluded that a passive investor with no connection to the production of crops or livestock is not engaged in a farming operation. It, therefore, remanded the case to the bankruptcy court for further factual findings, and instructed that debtors may only claim to be engaged in a farming operation if "they had some significant degree of engagement in, played some significant operational role in, or had an ownership interest in the crop production."[16] The court found that the same significant degree of engagement is required when the farming operation in question involves raising livestock.[17] After reviewing the case law, the *Easton* court pointed out that "[t]he theme common to these cases is the existence of some indicia of involvement on the part of the debtor in the farming activity."[18]

The Petitioning Creditors here contend that Corn-Pro could not be engaged in a farming operation because it was managed by independent contractors and had no employees. They further contend that, while Corn-Pro owned the pigs, it owned no real estate in which to birth, raise, or finish them. Instead, it hired third-party producers to perform those services under contract. In other words, they contend that Corn-Pro was a conduit used by its members to make passive investments in livestock, and that Corn-Pro itself did not play a significant role in raising such

---

[15]883 F.2d 630 (8th Cir. 1989).

[16]*Id*. at 636.

[17]*Id.* at 633.

[18]*Id.* at 635.

livestock. We disagree. The Corn-Pro members who managed the operations did so as independent contractors, but they did so as representatives of, and on behalf of, Corn-Pro. The fact that they were paid as independent contractors, and not as employees, does not alter the fact that they were acting for the corporation. In that capacity, they oversaw the care of the animals, physically checked on the animals, arranged for the purchase and marketing of the animals, ordered at least some of the feed, gave some of the vaccinations, and hired transportation for moving the hogs to slaughter. Corn-Pro, therefore, is not a passive investor; instead, it had significant involvement in the raising of the livestock, the sale of which generated all of its income.

In the *Easton* case, on remand, the bankruptcy court held that the landlord-debtor, while not obligated to do so, had provided certain assistance to his tenant by seeding and mowing certain set-aside acreage, building and repairing fences, and grazing his own cattle on the leased acreage. In addition, the landlord sometimes mowed the roadside and weeded beans that had been planted by the tenant. The bankruptcy court held that, based on these activities, the landlord played a significant operational role and had a significant degree of engagement in the production of crops on land he was renting out.[19] Similarly, in *In re Dakota Lay'd Eggs,*[20] the court included income received by a corporation from flocks owned by it, but managed by others, as income from a farming operation. The eggs produced by those managed flocks were taken to the corporation's facility to be candled, weighed, graded, and packaged in cartons.[21] The role played by Corn-Pro's representatives in managing its business activities was as least as significant as that played by those found to be engaged in a farming operation in *Easton* and *Dakota Lay'd Eggs*. We conclude that

---

[19]*In re Easton,* 118 B.R. 676 (Bankr. N. D. Iowa 1990).

[20]57 B.R. 648 (Bankr. D. N.D. 1986),

[21]*Id.* at 650.

Corn-Pro had a significant degree of engagement in, played a significant operational role in, and had an ownership interest in the raising of its livestock.

The Petitioning Creditors argue that Corn-Pro was organized in such a way as to avoid being labeled as a farmer under Nebraska law, and should, therefore, be estopped from claiming that it is a farmer for bankruptcy purposes. While the Nebraska constitution does prohibit corporations from owning farmland, or engaging in farming operations,[22] that prohibition does not apply to nonprofit corporations.[23] The Nebraska Supreme Court nevertheless, held, after Corn-Pro was formed, that cooperative associations such as Corn-Pro may not own farm or ranch land.[24] Whether the ruling of the Nebraska court would prohibit Corn-Pro from engaging in farming operations, even though it does not own real estate, as argued by the Petitioning Creditors, is unclear. It is, however, also irrelevant to the question of whether Corn-Pro should be equitably estopped from claiming that it is a farmer under federal law.

In order for equitable estoppel to apply, the Petitioning Creditors needed first to prove that Corn-Pro's conduct amounted to a false representation or concealment of material facts calculated to convey the impression that the facts are not what Corn-Pro now asserts.[25] There is no such evidence here. Indeed, Corn-Pro's Articles of

---

[22]Neb. Const. Art. XII, § 8(1).

[23]*Id.* at Art. XII, § 8(1)(B).

[24]*Pig Pro Nonstock Cooperative v. Moore*, 568 N.W. 2d 217, 228 (Neb. 1997) (stating that "[i]t is precisely this type of absentee ownership and operation of farm and ranch land by a corporate entity which the plain language of Article XII, § 8, prohibits").

[25]*Woodward v. City of Lincoln*, 588 N.W.2d 831, 836 (Neb. 1999). Other factors necessary to prove equitable estoppel, which we need not reach here, include: (1) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (2) knowledge, actual or constructive, of the real facts; (3) lack of knowledge and of the means of knowledge of the truth as

Incorporation specifically state that it is formed to assist its members in swine production, and to provide facilities and services for its members as part of their agricultural production activities. [26] Since there is no evidence of a false representation or concealment, equitable estoppel is not applicable.

In sum, we conclude that Corn-Pro was engaged in a farming operation. Since all its income was from that farming operation, it is a farmer within the meaning of the Bankruptcy Code. Accordingly, it cannot be the subject of an involuntary bankruptcy petition. The bankruptcy court properly dismissed the involuntary petition.

## B. ATTORNEY'S FEES AND COSTS

Corn-Pro filed a separate motion seeking costs and attorney's fees, as well as actual and punitive damages. The bankruptcy court denied Corn-Pro's request, stating that the legal issue as to whether Corn-Pro is a "farmer" presented "a very close question." Corn-Pro appeals that determination.[27]

The Code authorizes a bankruptcy court to award attorney's fees and costs upon the dismissal of an involuntary petition:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not

---

to the facts in question; (4) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (5) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel). *Id.*

[26]Appellants' Appendix at 114.

[27]Corn-Pro appeals only the denial of costs and attorney's fees, not the denial of punitive damages.

waive the right to judgment under this subsection, the court may grant judgment–

    (1) against the petitioners and in favor or the debtor for –

        (A) costs; or

        (B) a reasonable attorney's fee.[28]

Corn-Pro argues that an award of costs and fees is appropriate in all cases where the petition is dismissed at the request of the debtor,[29] or that dismissal at least raises a rebuttable presumption that costs and fees are authorized.[30] The Eighth Circuit has held, however, that an award of costs and fees is within the discretion of the trial court.[31] Indeed, if Congress had intended such an award to be mandatory, it would have used the word "shall," not "may." We conclude, therefore, that an award of costs and fees is not required in all cases in which the petition is dismissed. Instead, we conclude that a totality of circumstances test is the correct framework for making a determination regarding costs and fees. Here, the court found no evidence of bad faith, and also found that the issue of whether a nonstock cooperative association could be a farmer was a very close call. In *In re Scrap Metal Buyers of Tampa, Inc.,* the court denied costs and fees after finding that the case had merit, despite dismissal, and that "the Petitioning Creditors' actions were reasonable under the circumstances,

---

[28]11 U.S.C. § 303(i)(1).

[29]*In re K.P. Enterprise*, 135 B.R. 174, 177 (Bankr. D. Me. 1992); *In re Leach*, 102 B.R. 805, 808 (Bankr. D. Kan. 1989).

[30]*In re Scrap Metal Buyers of Tampa, Inc.*, 233 B.R. 162, 166 (Bankr. M.D. Fla. 1999), *affirmed*, 253 B.R. 103 (M.D. Fla. 2000); *In re Ross*, 135 B.R. 230, 238 (Bankr. E.D. Pa. 1991)..

[31]*Banker's Trust Company BT Service Company v. Nordbrock (In re Nordbrock),* 772 F.2d 397, 400 (8th Cir. 1985).

and their motives and objectives were legitimate uses of the Bankruptcy Code."[32] Likewise, we conclude that the bankruptcy court did not abuse its discretion in denying costs and fees to Corn-Pro based on the totality of the circumstances.

## C. JUDICIAL NOTICE

Both parties asked us to take judicial notice of pleadings filed, since the grant of summary judgment, in state court proceedings involving these parties. Those motions are denied.

The judgment is affirmed.

_____

---

[32]233 B.R. at 167.