WILLIAM C. JENNINGS, APPELLANT, V. GINA C. DUNNING, DIRECTOR, DEPARTMENT OF SOCIAL SERVICES, ET AL., APPELLEES.
440 N.W.2d 671

Filed June 2, 1989.   No. 87-329.

Neil B. Danberg, Jr., of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Robert M. Spire, Attorney General, and Royce N. Harper for appellees.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

ROWLANDS, D.J.

This is an appeal from a denial of medical assistance benefits to appellant, William C. Jennings, by the Department of Social Services (DSS) and its director.

On November 10, 1984, Jennings was severely burned in a fire at his mother's home. He was taken to St. Joseph Hospital in Omaha, where he was treated for burns over 80 percent of his arms. Jennings remained in the hospital, primarily in the intensive care unit, for over 2 months until January 14, 1985. The hospital bill amounts to approximately $200,000.

William Jennings had been separated from his wife, Ramona, for over 2 years prior to the accident. Ramona Jennings had filed her petition for dissolution of marriage in Douglas County District Court on October 30, 1984. During the period of separation, William Jennings had not contributed to the support of his wife or minor children.

After his discharge from the hospital, William Jennings resumed living with his wife. Whether this was a permanent arrangement, or one of convenience during recuperation, is not clear from the record. The regulations and practice of the Douglas County office of DSS required an application for medical assistance benefits to be made at its 42d Street office.

Jennings was unable to travel, so his wife and Michael Davis, an entitlement counselor at St. Joseph Hospital, went to the DSS office on February 6, 1985, to file a medicaid application for aid to the aged, blind, or disabled (AABD).

At the conclusion of the application process, it was Davis' understanding that only William Jennings' birth certificate and Social Security card were necessary to complete the application.

DSS caseworker JoAnn Ragan testified, to the contrary, that she requested additional information from Ramona Jennings. When this information was not forthcoming, Ragan denied the application on March 29, 1985, and she sent a notice of denial to Ramona Jennings but not to Davis. However, on April 4, 1985, Ramona Jennings called and asked for more time to obtain the documents. Ragan advised Ramona Jennings that she would hold the record until Monday and, more significantly, admitted during questioning at the administrative hearing that she told Ramona Jennings that if she had trouble getting this information, if Ramona Jennings would call back, "I would again reopen the case and try to determine her eligibility."

Davis did not find out the application had been rejected until May 9, 1985. On that date he called Ragan and was advised that she had considered the resources of both spouses together. She stated that she could not determine eligibility because Ramona Jennings' resources could not be ascertained and that William Jennings' wages could not be determined.

Ragan did not keep notes of her conversation with Davis, but Davis did. Davis' entry on May 9, 1985, reads: "Case can be reopened if documentation provided."

On May 23, 1985, Davis took Ramona Jennings to the DSS office and met a second worker named Terry Lorenzen. Bank statements were delivered to Lorenzen. Davis testified that Lorenzen indicated he thought he could get benefits back to November 1, 1984.

Davis' notes from the May 23, 1985, meeting contain the following entry: "He said he should be able to get medical back to 11-1-84. He said it will take until 6-30-85."

At the administrative hearing Lorenzen did not deny Davis' testimony, but stated he told Ramona Jennings and Davis that

there would be a possibility of reopening the case if additional information was provided. Lorenzen admitted that he did not inform either Davis or Ramona Jennings that the appeal time was running on the March 29, 1985, rejection.

On June 26, 1985, DSS advised William Jennings and, on July 7, 1985, advised Davis, that the supplemental application had been denied because DSS believed that both spouses' resources should be considered together, and there was insufficient information for a "prudent person" to determine eligibility.

William Jennings filed his appeal on July 18, 1985. A contested administrative hearing was held October 3, 1985. On November 27, 1985, the director of DSS affirmed the total denial of medical benefits. The application of February 6, 1985, was rejected because William Jennings did not file his appeal within 90 days of March 29, 1985. The denial of the supplemental or second application was affirmed for the reasons stated by the Omaha office of DSS as set forth in the preceding paragraph.

Jennings filed an appeal in the Douglas County District Court, which affirmed the findings and decisions of DSS on January 28, 1987. A motion for new trial was denied March 18, 1987, and this appeal followed.

For the reasons set forth below, we affirm that portion of the district court's denial of benefits after January 14, 1985, but modify the decision so as to award complete medicaid AABD benefits from November 10, 1984, to January 14, 1985.

The standard of review in this proceeding is de novo on the record, and this court makes independent findings of fact without reference to those made by the agency whose action is being reviewed. Neb. Rev. Stat. § 84-918 (Reissue 1981); *Department of Health v. Grand Island Health Care*, 223 Neb. 587, 391 N.W.2d 582 (1986); *Dieter v. State*, 228 Neb. 368, 422 N.W.2d 560 (1988).

Our review of the record convinces us that the appellant was clearly entitled to medical assistance benefits during his period of hospitalization. 469 Neb. Admin. Code, ch. 2, § 2-006 (1984) provides: "In the case of a bona fide separation, legal separation, or divorce, the resources and income of each are

considered individually."

The evidence is overwhelming that William Jennings and his wife, Ramona, had been separated for over 2 years prior to the unfortunate fire of November 10, 1984. Ramona Jennings supported herself and her minor children during that extended period of time, and she had a petition for dissolution of marriage pending in Douglas County District Court when William Jennings was tragically burned. Likewise, the record is clear that William Jennings had so little income in 1984 that he was not required to file a tax return. Appellant's claim for medical benefits during his hospitalization must be granted unless he has failed to timely perfect an appeal.

DSS relies on 469 Neb. Admin. Code, ch. 1, § 1-007 (1985), which requires an appeal to the director within 90 days of any denial of benefits. The director contends the February 6, 1985, application was denied March 29, 1985, and no appeal was filed until July 18, 1985. Because of the positive representations made to both Ramona Jennings and Mike Davis by employees of DSS that the application would be held open, the taking of additional information and receipt of documents after March 29, 1985, and the reasonable reliance on those statements to the detriment of William Jennings, we hold that the appellees are equitably estopped from claiming that two separate and distinct applications were taken in this matter.

In general, it may be said that estoppel is a bar which precludes a party from denying or asserting anything to the contrary of that which has been established as the truth by his own deed, acts, or representations, either express or implied. 28 Am. Jur. 2d *Estoppel and Waiver* § 1 (1966). As this court stated in *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 653-54, 139 N.W.2d 821, 828-29 (1966):

> " 'So, while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. . . . The following, however, may

be ventured as the sum of all cases: That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice, and especially concerns conscience and equity.' . . ."

See, also, *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988).

The elements of equitable estoppel must be established by clear and convincing evidence. Those elements are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. *Circle 76 Fertilizer v. Nelsen*, 219 Neb. 661, 365 N.W.2d 460 (1985); *Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 348 N.W.2d 418 (1984); *Weiner v. Hazer*, 230 Neb. 53, 430 N.W.2d 269 (1988).

We recognize that the doctrine of equitable estoppel should not be lightly invoked against the State. However, the prior decisions of this court make it clear that the State of Nebraska or one of its political subdivisions may be subject to the doctrine of equitable estoppel under compelling circumstances where right and justice so demand in the interest of preventing a manifest injustice. *County of Scotts Bluff v. Hughes*, 202 Neb. 551, 276 N.W.2d 206 (1979); *Warren v. Papillion School Dist. No. 27*, 199 Neb. 410, 259 N.W.2d 281 (1977); 28 Am. Jur. 2d, *supra*, § 123; *Osmera v. School Dist. of Seward*, 216 Neb. 261,

343 N.W.2d 886 (1984).

In this particular case, we believe that manifest injustice would result if appellant were to be denied medical benefits after Ramona Jennings and Davis were assured on two separate occasions that the rejection of March 29, 1985, would be reconsidered if additional documents were delivered to DSS. Their reliance on these assurances was reasonable and in good faith, and William Jennings changed his position to his detriment by delaying an appeal until the matter was finally determined in June of 1985.

With reference to the claim for benefits after William Jennings resumed living with his spouse, a different situation arises. Section 2-006 set forth above, requiring separate consideration of income and resources of spouses, becomes inapplicable, and 469 Neb. Admin. Code, ch. 1, § 1-010 (1984) controls, wherein it provides that when the statements of the client are incomplete, unclear, or inconsistent, or when other circumstances in the particular case indicate to a prudent person that further inquiry must be made, the worker shall obtain additional verification before eligibility is determined. It is further provided under 469 Neb. Admin. Code, ch. 1, § 1-006 (1985), that the client has the primary responsibility to provide complete and accurate information.

The record reflects that Ramona Jennings had a savings account and a line of credit indicating she was the owner of a car sales business. Three vehicles were registered in her name. She lived in a large residence with three garages, and there was an automobile repair shop with a tow truck on the premises. DSS had a valid reason to be concerned about the combined resources of Ramona and William Jennings after they resumed cohabitating as husband and wife. A reasonable or prudent person had the right and duty to demand clarification or additional information. When this information was not supplied by either William or Ramona Jennings, or by Davis, the May 23, 1985, application was properly denied as to medical assistance benefits after William Jennings left the hospital and resumed living with his wife.

AFFIRMED AS MODIFIED.