BEVERLY R. KEENE, APPELLANT, V. DAVID TETEN, APPELLEE.
602 N.W. 2d 29

Filed November 9, 1999. No. A-98-905.

Thomas J. Walsh, Sr., of Walsh, Fullenkamp & Doyle, for appellant.

Thomas A. Grennan, of Gross & Welch, P.C., for appellee.

HANNON, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

On March 28, 1996, the plaintiff, Beverly R. Keene, was involved in a car accident with the defendant, David Teten, at the intersection of First Corso and 10th Streets in Nebraska City, Nebraska. The vehicle driven by Teten was owned by the Nebraska City Public Schools (school district). The Cincinnati Insurance Companies (Cincinnati Insurance), the insurer of the vehicle driven by Teten, compensated Keene for the property damage she suffered as a result of the collision. On March 23, 1998, Keene filed a negligence action against Teten seeking damages for physical injuries allegedly sustained during the collision. Teten filed a motion for summary judgment in the district court for Otoe County alleging that Keene had failed to comply with the notice requirement of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997) (Act). The district court granted Teten's motion. Keene appeals.

## BACKGROUND

On March 28, 1996, shortly after 5 p.m., the school district directed Teten to look for a school van which had not returned

from taking students to Omaha, Nebraska. Teten took a pickup truck owned by the school district. While attempting to locate the missing van, Teten was involved in a car accident with Keene at the intersection of First Corso and 10th Streets in Nebraska City. At the time of the accident, Teten was a maintenance worker employed by the school district. The accident report, completed by a Sgt. B. Friez of the Nebraska State Patrol, listed the owner of the truck as "NE City Public Schools" and the insurer of the truck as Cincinnati Insurance.

After the accident, Keene was contacted by Nate Kroenke, a representative of Cincinnati Insurance. Kroenke informed Keene that he would be representing the interests of Teten regarding any claims arising out of the accident on March 28, 1996. Prior to August 1, Cincinnati Insurance compensated Keene for the property damage to her car. Later in August, Keene retained an attorney to represent her with regard to her personal injury claim. The attorney notified Kroenke by a letter dated August 13, 1996, that he now represented Keene with respect to the injuries she allegedly sustained in the March accident. The attorney stated, "I presume that liability is not a problem in that you have already paid for the repair to my client's vehicle." The letter further stated that Keene was still being treated for the alleged injuries "and is not in a position to make a demand at this point in time."

Keene's attorney later received a letter from Kroenke dated October 16, 1996, acknowledging receipt of the letter of representation. The letter also stated, "When you and your client are in position to make a demand you may contact me at the above address or phone number. Please feel free to contact me if you have any questions concerning this matter." The letter did not make any reference to liability.

At the request of Cincinnati Insurance, Keene made recorded statements to two representatives of Cincinnati Insurance on February 27, 1997, at her home. Furthermore, prior to March 28, her attorney provided medical information to Cincinnati Insurance regarding Keene's treatment. The attorney then received a letter dated April 23, 1997, from Byron Frick, a claims representative of Cincinnati Insurance, accompanied by

a copy of the transcription of the recorded statements taken from Keene earlier. The letter stated:

> In reviewing this file, it has come to our attention that the most recent medical reports received end on December 19, 1996. In order for The Cincinnati Insurance Company to properly evaluate this loss, we ask that copies of reports post December 19, 1996 be sent to the above listed address.

Subsequently, Keene's attorney received a letter dated September 9, 1997, from Thomas Grennan, who had been retained by Cincinnati Insurance to defend the school district against any potential legal action arising out of the March 28, 1996, accident. The letter stated that Teten was operating the pickup truck within the scope and course of his employment with the school district. Furthermore, because Keene failed to comply with the notice requirements of the Act, the school district did not feel that it owed any liability to Keene. Keene stated in her reply to Teten's answer that the September 9 letter was the first time that she was aware that Teten claimed he was operating the vehicle within the scope of his employment with the school district. However, in her affidavit, waiver, and authorization, Keene states:

> I . . . authorize the use of the attached April 14, 1998 correspondence from my attorney, Thomas J. Walsh Jr., in which he states that he believes that Mr. Teten was working for the School District at the time of the accident. This has also always been my belief and I know of no facts to the contrary.

On behalf of Keene, her attorney sent a letter dated September 29, 1997, to Dr. Keith Rohwer, superintendent of the school district, notifying him of Keene's claim against the school district for personal injuries arising out of the accident on March 28, 1996. On January 8, 1998, the school board voted unanimously to deny Keene's tort claim.

The parties have stipulated that Kroenke and Keene or her attorney never had any conversation regarding the Act, the necessity of filing a tort claim, or the statute of limitations. Neither the school district nor Kroenke ever told Keene that it was unnecessary or necessary to file a written tort claim with the school district.

On March 23, 1998, Keene filed a negligence action against Teten seeking damages for physical injuries allegedly sustained during the collision.

In Teten's answer, he affirmatively alleged that he was acting within the scope and course of his employment with the school district at the time of the accident and that he was an employee of a political subdivision within the meaning of § 13-903. Finally, Teten asserts that Keene failed to comply with the formal filing requirements of the Act.

Keene filed a reply in which she alleges that she substantially complied with the provisions of the Act and, in the alternative, that the conduct of Teten's agents in paying a portion of Keene's claim for the property damage and in indicating that she could deal directly with Kroenke constituted a waiver to assert the provisions of the Act as a defense in this case.

On May 20, 1998, Teten filed a motion for summary judgment grounded on Keene's failure to comply with the formal notice requirement of the Act. The district court granted Teten's motion, and Keene appeals.

## ASSIGNMENTS OF ERROR

Summarized, Keene alleges that the district court erred in granting Teten's motion for summary judgment. Specifically, she argues that the pleadings and affidavits

> raised sufficient factual issues and ultimate inferences justifying a trial on whether the conduct of the Cincinnati Insurance Company authorized and acquiesced in by [Teten] and the School District permits invocation of the doctrines of substantial compliance, equitable estoppel or waiver as a bar to [Teten]'s use of the one-year written notice requirement of the Political Subdivisions Tort Claims Act as a Defense to [Keene]'s action for personal injuries.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999); *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998); *Chalupa v. Chalupa*, 254 Neb. 59, 574 N.W.2d 509 (1998).

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Woodard, supra; American Family Ins. Group v. Hemenway*, 254 Neb. 134, 575 N.W.2d 143 (1998); *Houghton v. Big Red Keno*, 254 Neb. 81, 574 N.W.2d 494 (1998).

## DISCUSSION

■ "The Political Subdivisions Tort Claims Act reflects a limited waiver of governmental immunity and prescribes the procedure for maintenance of a suit against a political subdivision." *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 366, 417 N.W.2d 757, 764 (1988). The Act provides:

> No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued in accordance with section 13-905.

§ 13-920. In the present case, Keene does not contest that Teten is an employee of the school district. Accordingly, Keene was required to comply with the requirements set out in the Act despite the fact that the school district was not sued. See, e.g., *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997); *Kuchar v. Krings*, 248 Neb. 995, 540 N.W.2d 582 (1995).

Keene argues that the evidence presented creates genuine issues of fact precluding summary judgment. Keene asserts that her failure to strictly comply with the formal filing requirements of § 13-905 should be excused for several reasons. First, Keene argues that there is sufficient evidence from which a fact finder could conclude that she substantially complied with the formal

filing requirements through her dealings with Cincinnati Insurance. Second, she contends that there is sufficient evidence presented to raise the issue of whether Teten and the school district waived the formal notice requirements of the Act. And finally, in a somewhat related argument, Keene claims that evidence was presented to raise the inference that Teten should be equitably estopped from asserting the untimely filing as a defense.

*Substantial Compliance.*

The Act requires that written notice be "filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision," unless the governing body of the political subdivision permits filing with its law department. § 13-905. The evidence is undisputed that the school district has no "law department." Keene, through her attorney, sent a letter dated September 29, 1997, to Dr. Rohwer, superintendent of the school district, regarding her personal injury claim from the March 28, 1996, accident. However, this was approximately 6 months after the statute of limitations for submitting a written claim expired. Once the issue of the plaintiff's failure to comply with the notice requirement of the Act is properly raised in a demurrer or answer, the plaintiff then has the burden to show compliance. See *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994).

Keene argues that her dealings with Cincinnati Insurance are sufficient to create an issue of fact as to whether she substantially complied with the notice provisions of §§ 13-920 and 13-905. Specifically she relies on the August 13, 1996, letter from her attorney to Kroenke, the adjuster for Cincinnati Insurance; the two recorded statements given February 27, 1997, which provided additional notice and details of her injury claim; Cincinnati Insurance's investigation of the accident; and the fact that the school district was not prejudiced by her failure to strictly comply with the Act.

The Nebraska Supreme Court has recognized the doctrine of substantial compliance under the Act. *Schoemaker, supra*; *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989); *Chicago Lumber Co. v. School Dist. No. 71*, 227 Neb. 355, 417

N.W.2d 757 (1988). It is well established that " 'substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with [§ 13-905], when the lack of compliance has caused no prejudice to the political subdivision.' " *Willis*, 232 Neb. at 538, 441 N.W.2d at 849 (quoting *Chicago Lumber Co., supra*). *Willis* recognized a distinction between a claim's content substantially complying with the Act and filing the claim with the wrong person as substantially complying with the Act.

> A notice which has been filed with a person or recipient designated by the act and which contains appropriate information to satisfy the notice requirement of the act provides a political subdivision with an opportunity to investigate, and possibly settle, a tort claim. [Citation omitted.] However, a notice of claim given to one who is not designated to receive notice under the Political Subdivisions Tort Claims Act may prevent a political subdivision's opportunity to investigate and settle claims inasmuch as an unauthorized recipient of notice very likely lacks power to initiate an investigation into the claim with a view toward settlement or formulation of a defense in litigation over an unsettled claim.

*Willis*, 232 Neb. at 539, 441 N.W.2d at 850.

■ In *Willis*, the claimant's attorney sent notice, within 8 months of the accident, to the Lincoln Transportation System. The maintenance superintendent of the Lincoln Transportation System and the city risk manager were both aware of the accident, and the superintendent had received the attorney's letter and notified the city risk manager. Nevertheless, the Nebraska Supreme Court in *Willis* rejected the expansion of the substantial compliance doctrine. It held that for substantial compliance with the written notice requirements of the Act, within 1 year from the act or omission in which the claim is based, the written notice of claim must be filed with *an individual or office designated in the Act as the authorized recipient for notice of claims against a political subdivision.*

■ In *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994), the issue was again presented.

There, despite the Metropolitan Utilities District's claims adjuster's knowledge of the accident and the possibility of a claim, the Supreme Court found that the claimant's attorney's letter to the claims adjuster failed to satisfy the requirements of the Act in two respects: (1) It was not received within 1 year after the claim accrued, and (2) notice was not given to an authorized official as required by § 13-905. The *Schoemaker* court reasoned:

> Section 13-905 requires notice to a designated individual or entity of a political subdivision in the form of a written claim. It would defeat the purpose of § 13-905 if mere knowledge of an act or omission, by a nondesignated party, was sufficient to satisfy the requirements of that section.

245 Neb. at 973, 515 N.W.2d at 679. The principle that written notice must be filed with an individual or office designated in the Act as the authorized recipient of claims in order for the notice to substantially comply with the requirements of the Act has been reaffirmed recently in *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

A party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). After a party moving for summary judgment has shown facts warranting judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law. See, *Boyle, supra*; *Kaiser, supra*.

The evidence is undisputed that Keene did not provide written notice to a party designated within the Act until after the statute of limitations had expired. Assuming, without deciding, that the content of Keene's attorney's letter of August 13, 1996, to Kroenke substantially complied with the Act, the evidence is undisputed that Kroenke was not a party designated by the Act as the authorized recipient for notice of claims against the school district. See, *Woodard, supra*; *Schoemaker, supra*; *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989). The evidence before us fails as a matter of law to establish that

Keene substantially complied with the notice requirements of the Act. The district court's implicit finding that Keene failed to present evidence raising any genuine issue of material fact regarding application of the doctrine in this case was correct and is affirmed.

*Waiver.*

Keene also contends that the payment of her property damage claim and the October 16, 1996, letter in which Cincinnati Insurance acknowledged her claim and solicited further contacts were sufficient to raise a fact issue regarding whether the school district, through Cincinnati Insurance, waived the timely claim requirements of § 13-905.

Waiver is "a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed." *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 681, 350 N.W.2d 549, 552 (1984). To establish waiver of a legal right there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994).

In *Schoemaker*, the court rejected Schoemaker's argument that the contents of a letter from a claims adjuster was sufficient to constitute a waiver of a filing requirement. Although the letter implied that a settlement would be made, "the settlement appears to be predicated on the receipt of [certain] items[;] it is not an unequivocal assurance of payment." *Id.* at 974, 515 N.W.2d at 680. The claims adjuster in that case did not advise Schoemaker that it was not necessary to file a written claim, a fact the Supreme Court found significant in concluding that no waiver had been established.

Keene attempts to distinguish *Schoemaker* from the facts here in two respects. Many of her arguments, however, are directed to the equitable estoppel portion of her appeal. As to the waiver issue, as in *Schoemaker*, the record here is absent any "unequivocal assurance of payment" of Keene's personal injury claim by Cincinnati Insurance. Instead, Cincinnati Insurance was soliciting settlement discussions, requesting information, conducting

an investigation, and encouraging further contact. Kroenke's October 16, 1996, letter contained nothing that could be inferred as an "unequivocal assurance of payment." In fact, the statement in the letter from Keene's attorney to Kroenke that he was presuming "liability was not a problem" went unanswered in Kroenke's October 16 response. We also find it significant that no one on behalf of the school district or Cincinnati Insurance ever told Keene that she was not required to submit a claim to the school district. See *Schoemaker, supra.* Finally, there is no evidence that anyone on behalf of Cincinnati Insurance or the school district made any assurance or guarantee regarding the payment of her personal injury claim at the time Cincinnati Insurance paid her property damages. Indeed, by the time the 1-year period expired, the parties had not even engaged in negotiations over Keene's injury claim.

Granting Keene every favorable inference deducible from the evidence, we fail to find sufficient evidence to raise a genuine issue over whether Teten, the school district, or Cincinnati Insurance relinquished or abandoned the requirement that a written tort claim be timely filed as required by § 13-905.

*Equitable Estoppel.*

Keene next argues that a fact finder should be allowed to decide whether Teten should be equitably estopped from asserting the defense of her failure to give timely written notice of her claim to the proper person. Keene contends that the evidence is sufficient to create an inference that Teten and the school district by and through their agent, Cincinnati Insurance and its employees, "lulled [her] into a false sense of security" that her claim would be settled. Brief for appellant at 31. She relies again on (1) the payment of her property damage claim and (2) Cincinnati Insurance's investigation of her claim and the October 16, 1996, letter in which Cincinnati Insurance invited a demand for her personal injury claim when she was in a position to make one.

The Nebraska Supreme Court has historically applied the doctrine of equitable estoppel against a private party under different standards than against a political subdivision. See *Woodard v. City of Lincoln,* 256 Neb. 61, 588 N.W.2d 831 (1999), and cases cited therein. While the school district is not a

party to this lawsuit, Teten's employment with the school district has, as previously discussed, triggered the claim requirements of the Act. See § 13-920. Therefore, we view the applicability of the equitable estoppel doctrine in this case as if the school district, a political subdivision, was a party. In *Woodard*, the court held that

> the state and its political subdivisions can be equitably estopped from relying on the statute of limitations found in the tort claims acts upon a showing that the elements of equitable estoppel have been met, as well as compelling circumstances, where right and justice so demand in the interest of preventing manifest injustice.

256 Neb. at 67, 588 N.W.2d at 836.

 In order to invoke the doctrine of equitable estoppel, a party must first satisfy the following six elements: (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming estoppel. *Id.* Each element of equitable estoppel must be proved by clear and convincing evidence. *Double K, Inc. v. Scottsdale Ins. Co.*, 245 Neb. 712, 515 N.W.2d 416 (1994); *Agrex, Inc. v. City of Superior*, 7 Neb. App. 237, 581 N.W.2d 428 (1998).

> The first prong of this test . . . is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed.

*Woodard*, 256 Neb. at 68, 588 N.W.2d at 836.

*Payment of Property Damages.*

Keene first relies on payment of her property damage claim as conduct which could reasonably be inferred to establish the first element of equitable estoppel. The details of this payment are not explained in the record before us, but it is undisputed that Cincinnati Insurance, on behalf of the school district, paid Keene for her automobile damage before her attorney became involved and before August 1, 1996. We have found no cases in Nebraska which have specifically discussed the effect of a voluntary partial payment of a claim on the applicability of the doctrine of equitable estoppel. However, *Luther v. Sohl,* 186 Neb. 119, 181 N.W.2d 268 (1970), and *Reifschneider v. Nebraska Methodist Hosp.,* 233 Neb. 695, 447 N.W.2d 622 (1989), are illustrative by example.

In *Luther,* the plaintiff was injured while working on the defendant's roof. The plaintiff was an insured of Farm Bureau Insurance Company, which was also the liability insurer of the defendant at the time of the accident. Farm Bureau had paid the plaintiff the full amount of medical payments provided for in both insurance policies within a few months after the accident occurred. Negotiations, and several settlement offers, followed before suit was filed. The district court dismissed the suit, finding the statute of limitations had expired. On appeal, the Nebraska Supreme Court affirmed. In doing so, it rejected the plaintiff's argument that the doctrine of equitable estoppel should preclude the defendant from asserting the statute of limitations. *Id.* Whether the payment of the plaintiff's medical bills was asserted as conduct which could equitably estop the defendant is not apparent from the opinion. The court's decision makes no reference to medical payments, instead basing its decision on the fact that 5 months remained in that case after the negotiations, which were the inducement for delay, had ceased and before the statute of limitations expired. *Id.* In *Luther,* in the course of negotiations, the insurance adjuster had told the plaintiff that as long as they were negotiating, the plaintiff need not worry about the statute of limitations.

In *Reifschneider, supra,* the plaintiff failed to file a lawsuit against Nebraska Methodist Hospital within 2 years of the alleged incident of malpractice of April 1977. The hospital,

pursuant to an agreement with the plaintiff's agent, paid the plaintiff's medical expenses arising from the incident for over a year after the alleged malpractice. In July 1978, the hospital ceased paying her medical expenses and began billing the plaintiff directly. However, negotiations continued. Her insurance claim was denied in February 1979.

Suit was filed in May 1980. The district court dismissed the suit after a bifurcated trial on the statute of limitations issue. On appeal, the plaintiff claimed that the defendant should be estopped to assert the statute of limitations because of its alleged representations which had " 'lulled [her] into a sense of security and belief that plaintiff's expenses would always be taken care of' " during settlement negotiations with the defendant. *Reifschneider*, 233 Neb. at 697, 447 N.W.2d at 624.

The *Reifschneider* court concluded the evidence established that the plaintiff was not induced to forgo filing suit by this agreement to pay medical expenses. Citing, inter alia, *Luther, supra*, the court observed that generally if a plaintiff has ample time to initiate an action after the inducement of delay has ceased to operate, he or she cannot excuse the failure to act within the statutory time on the ground of estoppel. *Id.*

While neither *Luther* nor *Reifschneider* expressly addressed the effect of a partial payment, it seems clear that a partial payment of a claim, standing alone, is insufficient to create a question of fact on the issue of equitable estoppel. We also note that those cases did not involve a political subdivision such as the one here, where a showing of "compelling circumstances" is necessary to invoke the doctrine. See *Woodard v. City of Lincoln*, 256 Neb. 61, 65, 588 N.W.2d 831, 835 (1999). Compare, *Wells v. Lueber*, 43 Ill. App. 3d 973, 358 N.E.2d 293, 3 Ill. Dec. 126 (1976) (advance payments for lost wages and medical expenses in conjunction with claimed concession of liability, numerous settlement offers, and encouraging plaintiff's counsel to delay in filing suit were sufficient to create fact issue on doctrine of equitable estoppel); *Suing v. Catton*, 118 Ill. App. 2d 468, 472, 254 N.E.2d 806, 808 (1970) (insurer's assurance that deficiency in automobile damage check would be paid when "they settled for everything" made in conjunction with investigation and negotiation of plaintiff's personal injury claim

deemed to constitute more than mere investigation and negotiation entitling fact finder to consider whether there had in fact been a waiver by estoppel; distinguishing cases where no conduct had occurred which may be deemed to constitute admission of liability on part of insurance company).

Similar to *Reifschneider v. Nebraska Methodist Hosp.*, 233 Neb. 695, 447 N.W.2d 622 (1989), Keene was represented by an attorney, at least by August 13, 1996 (approximately 7 months before the expiration of the statute of limitations for filing notice of her claim). The payment of Keene's property damage claim occurred shortly after the incident. If it is the payment of that damage that induced Keene not to file her written claim, that inducement had ceased long before the time period expired. See *id.* Unlike *Luther v. Sohl*, 186 Neb. 119, 181 N.W.2d 268 (1970), and *Reifschneider, supra*, the record here contains no settlement negotiations regarding Keene's personal injury claim. As stated, Keene makes no claim that at the time she was paid for her property damage, any assurances or guarantees were made regarding the settlement of her personal injury claims or the filing of a claim.

In *Woodard, supra*, the Supreme Court viewed payments made pending settlement negotiations as part of the overall circumstances justifying the submission of the issue of equitable estoppel to a fact finder. However, Keene's case is far removed from the compelling circumstances in *Woodard*. There, Woodard was injured when the bicycle he was riding was struck by the city's bus on May 28, 1992. Shortly after the accident, a claims specialist from the city's risk management office met with Woodard and a written agreement was entered into providing that voluntary payments would be made. The agreement further provided that these payments would stop if either side retained counsel. While the letter expressly stated that it was not an admission of liability by the city and it expressly reserved the right to Woodard and his wife to claim damages in the future, the city made regular payments to Woodard over a 3½-year period pursuant to the written agreement which discouraged the hiring of counsel.

After several written settlement offers were made and rejected, the last being in August 1995, substantially after the

relevant time period had expired, Woodard filed suit in March 1996. The city defended, inter alia, on the grounds that the suit was not commenced within 2 years after the accident. The trial judge sustained the subsequent motion for summary judgment of the city in part on that ground. The court in *Woodard* held that the evidence was sufficient to raise an issue of material fact on the doctrine of equitable estoppel and reversed the grant of summary judgment.

The Nebraska Supreme Court has said that an equitable estoppel rests largely on the facts and circumstances of the particular case. *Jennings v. Dunning*, 232 Neb. 366, 440 N.W.2d 671 (1989). The facts and circumstances of this case are distinguishable from the circumstances in *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999). Keene was never discouraged from obtaining legal counsel and was in fact represented by counsel well before the time limitation for filing a claim with the school district had expired. No formal written agreement existed between Keene and Cincinnati Insurance regarding payments pending settlement. Unlike *Woodard*, Keene never negotiated her injury claim with Cincinnati Insurance. At most, there were invitations to do so. Furthermore, Keene received a one-time payment for her property damage, unlike the series of payments made over a 3½-year period in *Woodard*.

*Investigation of Claim.*

Keene also relies upon Kroenke's letter of October 16, 1996; the taking of her statement by Cincinnati Insurance on or about February 27, 1997; and the request by Cincinnati Insurance of April 13, 1997, for current medical information as other conduct which conveyed the impression that it was not necessary to file a written claim with the school district. As already stated, Kroenke's letter was nothing more than an acknowledgment by Cincinnati Insurance that Keene was represented by counsel regarding her personal injury claim and an invitation to submit a settlement demand at such time as Keene's medical condition had stabilized. The statement in the letter from Keene's lawyer to Kroenke that he was presuming that "liability [was] not a problem" went unanswered in Kroenke's response. Keene's statements to representatives of Cincinnati Insurance and its

request for current medical information may properly be characterized as the investigation of Keene's claim in hopes that a voluntary settlement could be reached, but little more.

Keene argues that neither Cincinnati Insurance nor the school district ever told her that it was necessary to file a written claim. There is no duty on the part of a political subdivision or any other party to inform an adversary of the existence of a statute of limitations. *Woodard, supra.* We again note that no one on behalf of the school district or Cincinnati Insurance ever told Keene that she was *not* required to submit a claim to the school district. In *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989), the lack of evidence that anyone had informed the plaintiff or his attorney that the filing of a claim was unnecessary was significant in rejecting the applicability of the doctrine of equitable estoppel. See, also, *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994).

As recently iterated in *Woodard,* " '[T]he mere pendency of negotiations during the period of a statute of limitations, which are conducted in good faith with a view to ultimate compromise, is not of itself sufficient to establish an estoppel.' " 256 Neb. at 69, 588 N.W.2d at 837, quoting *Turner v. Turner*, 582 P.2d 600 (Wyo. 1978). As noted in *Woodard*, ordinary settlement negotiations contain the implicit notion that if settlement is not made, litigation will be necessary. It is the conveyance of the impression that litigation "would not be necessary that, if proved to the finder of fact, establishes the level of misrepresentation necessary for equitable estoppel." 256 Neb. at 69, 588 N.W.2d at 837. If settlement negotiations are generally insufficient to establish estoppel, certainly mere investigation of a claim absent negotiations, such as occurred here, is not either.

In sum, we are not prepared to hold that an insurance company's payment of a property damage claim, its correspondence with a plaintiff's attorney inviting further contacts regarding an injury claim arising out of the same accident, together with its subsequent investigation into that claim is sufficient to equitably estop the insurer's insured from asserting a timely filing defense. We can infer no false representation or concealment of material facts from this conduct. Moreover, we fail to see how

this conduct could be deemed to be calculated to convey the impression that Keene's injury claim would absolutely be settled short of litigation. Finally, we find no evidence that the school district or its agents ever concealed from, or misrepresented to, Keene or her attorney Teten's status as acting within the scope of his employment for the school district at the time of the accident, the fact that triggered the notice requirement of the Act in this case.

As the evidence fails to establish the first element of equitable estoppel, it is unnecessary for disposition of this case to discuss whether Keene satisfied the remaining elements or to address the "proof of agency" issue raised in the parties' briefs. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (holding appellate court is not obligated to engage in analysis not needed to adjudicate controversy).

## CONCLUSION

The record reflects that Keene did not give written notice of her claim to a proper person or entity designated by the Act within the statutory period. Therefore, substantial compliance is inapplicable under these facts. Furthermore, the evidence is insufficient as a matter of law to raise a question of material fact as to the issue of equitable estoppel or waiver. The district court properly granted Teten's motion for summary judgment.

AFFIRMED.